Yes, Your Honor, we'd like to reserve five minutes. Sure. Your Honor, may I please? We may not need all this time in any of them. The issues are pretty straightforward. I would hope so, Your Honor. I am Frederick Nelson. Yes. And I have a co-counsel table, Herbert Gray of Portland. And, Your Honor, what we want to address, I think, just jump right into it here and just show that there are some facts that make this case clearly an error below by the magistrate. And that is that there is discretion if, arguably, in a non-public forum. Let's just assume that's true. And we know that this court, in fact, in the ACLU v. Las Vegas case that both you were on, and, in fact, you wrote on that opinion, you noted that in circumstances even in a non-public forum, you can't allow unlimited discretion because that is, by per se, it's overbroad. And, therefore, it also brings up the issue of being able to challenge it. You noted the City of Lakewood v. Plain Dealers Association case. And you also noted, Your Honor, that in such a circumstance, you have the right to challenge such unlimited discretion for the reason that it can stifle speech. Not only does it self-censor, create self-censorship, but it creates these very ad hoc decisions by administrators, and it doesn't allow the opportunity for this court or any other court to review that. And what do we have wrong here? We have wrong here two particular things which clearly violate constitutional principles. And that would be, one, unlimited discretion. And, two, there is no review whatsoever. If Ms. Sorensen or whoever comes out after her just decides for whatever reason that some speech is offensive to the sensitivities of the public or is somehow objectionable to any member of the public, she will ban it, and that is the end of the story. But there is no review. It's over with. And Thomas v. Chicago Park continues to instruct us that that is not acceptable. And we believe, Your Honor, that you've made it very clear that even the policy itself must be looked at as to the manner in which it is interpreted by the judicial or the administrative body of the person that's doing it. In this case, the Port of Portland, the person that is assigned to review the content of literature. Very recently, Your Honor, you wrote in your concurring opinion in Menotti v. City of Seattle, it's not just what's within the four corners of the text of the policy that must be reviewed. It is in addition to that, as you cited in Forsyth Supreme Court case, it is how they interpret that policy. So the magistrate erred by confining his review to only the policy, what he saw as the written policy, rather than looking at what is undisputed in this case. And it's undisputed, and the appellees don't even go against us on the factual matter, that they do engage in content review. They engage in that content review to assure that the public is not offended. Look, you never applied for a permit, correct? Correct, Your Honor. And as we know, that's not the case. So you're not making it as applied a challenge? Well, I would, let me answer your question first to say we never applied. But let me answer that question that the City of Lakewood case already resolved that it's not even necessary. As quoting from the City of Lakewood, which you recently, which you also recently have reaffirmed and looked at, there is a statement that says, the prohibition on unvital discretion applies, quote, even if the discretion and power are never actually abused, City of Lakewood. Now, going to the second part of your question, do we think their policy was applied against us? We do in this regard. We know the policy itself doesn't allow or call for, at least, that the prior restraint be one where you have to have a sit-down meeting with the policy administrator. In this case, we know factually, and it is true and undisputed, that our clients were told you may not return to this airport, you may not distribute literature until you have a meeting, a sit-down meeting and training with us. Now, you see, that is additional discretion that's not within the policy. And they applied it against us to say you are prohibited from coming back until you jump through these extra hoops. In other words, they're making it up as they go along. And as held in Minotti and as held in Forsythe, you cannot just look at what they've got written down. We must look at how they interpret it. And they did apply it by saying to our clients, stay away from here until you come back and you do all these little technical things we've told you to do, making the prior restraint even more infirm because, again, they're just taking things out of context and saying that we can look at the words on the policy but make up anything we want to. And if you don't comply with whatever we make up as we want to as we go along, then you cannot distribute or even hand out one single piece of paper. We're not going to let you do that. So if we agree at least on one point that there is unbridled discretion, we do therefore, Your Honor, talking about the as-applied issue, we've got to the point where at least it doesn't need to be applied because under Lakewood it's still overbroad and it is allowed to be challenged. There are two points in Lakewood, Your Honor, that you wrote when you looked at ACLU versus City of Las Vegas. Those two points are— I wasn't in the majority. I hate to— Yes. Your Honor, but the point still remains that the case law is solid there. And you wrote that looking to—you looked at Lakewood anyway, and that was— Well, what does the Lakewood case hold, though? The holding of the Lakewood case was this, and it looked for these two elements that I'd like to point out, and that's what I think answers the question. One, would this unbridled discretion cause self-censorship or would it create some post hoc, ad hoc excuses and decisions on speech by the administrator? That's the first point. And second point, would that regulation itself touch on what is free speech? Those are the two elements that are necessary to look when you have unbridled discretion. And even the appellees agree with us. In fact, that if it's over broad, we have the right to challenge it. And I think that that's one of the main things we need to look at in this case, that even in a nonpublic forum, these standards do apply. And we find it truly at the heart of our concern with this policy. I'm not sure how much—this particular regulation, I guess it is. I'm not sure what exactly it's entitled. General Rules and Regulations, I guess at the Portland Authority. It says a limited number of locations will be assigned on any particular day in the airport terminal building for the exercise of free speech rights, and they will be assigned by the terminal supervisor in a first come, first served basis. Correct. Your Honor, in that regard— That sounds to me like if you apply, you get your permit. But that's not entirely true because we know— But that would have to get us into an as-applied challenge, and you didn't file it. You didn't even make an application. And, Your Honor, that goes to two points, and one thing we've already been discussing. That's the Lakewood case, and also the Brown v. Department of Transportation case, also a Ninth Circuit case. And when we're talking about the locations, I want to make clear what we made clear to the magistrate judge, which is this. We're not arguing about the necessary locations themselves. We're arguing that, again, discretion was utilized to allow another group to go in a location that wouldn't even be within those limited number. You see, so here we have, again, another example of this discretion being utilized so that the favored group, the airline attendants and those people who had a labor dispute, they could go where we could not. Now, under Brown— But we don't know that. You didn't apply. But, Your Honor, we know that under Brown it teaches us we don't need to apply because it would be futile to ask. And we actually did ask. Have they ever denied it? Does the record show if they ever denied a permit? The airline people? No, the airport—the port authority. It doesn't show that they denied any permit to the airline people. No, I said—that wasn't my question. My question was, does it show that they have ever denied a request for a permit by anybody? I understand your question, Your Honor. No, the record doesn't show that, but that's irrelevant because in a scenario where there's unbiased discretion, again, under Lakewood, in cases you have written and followed on, it doesn't matter whether or not you've applied. The very existence of the regulation itself causes constitutional harm. Looking at Thornhill v. Alabama, the Supreme Court said very clearly, it is not that the administrator might abuse the discretion. It's the recognition that the very existence of the policy could create that harm. So, therefore, that's why you're allowed to challenge these policies being so overbroad and why such unlimited discretion should not be allowed in any regulation of policy. Who is to know what is objection or offensive to the public? If you're not even allowing a judicial review of that decision, then the person is there constrained and never again having an opportunity to even ask a person who is perhaps more neutral to make a final decision. They don't allow that. Their administrative policies, as they've had well established for quite a long time, as trained to Ms. Sorensen passed down from her supervisor, is that if someone wants to hand out a piece of paper and you think it's objectionable or offensive to the public's sensitivities, you can ban it. And that's the end of the story. I think she referred to, for example, pornography. She gave an example of pornography, but it's not limited to pornography. But we don't know. There's – if you had applied for your application, it may well have been granted. Your Honor, ours might have, but we're not here just standing in our shoes. As the Supreme Court has noted, we're standing in the shoes of the public in general to say that they shouldn't be allowed to ban speech that might be offensive. And here's an important point. In the Rosen case, the court brought up previously that our type of speech could very well be offensive to the public. And, in fact, it is offensive to the public. The religious dispute debate is one of the key things in our society that people argue over. So, therefore, how can we be assured that they won't do so in the future, not just against our speech, but other speech? And so we're standing in the shoes of people who want to speak and who want to have a message that might be offensive to any administrator if they come along. And here's another point about that. We're not talking about just Ms. Sorenson. We're not talking about her because she's just taken over the job. She's been in it now four years, two years at the time of her deposition. But she's replaced someday. Someone else comes along. And then that person has a different sensitivity to different messages. So we'll never know. In other words, if you uphold this regulation that says they can censor offensive or objectionable speech, then what you're saying to all the Ninth Circuit people below you and all the airports and everyone's regulating that you can do this. You can go ahead and say offensive or objectionable speech can be barred. And there's no limitation on that. And you don't have to worry about judicial review either. And your case that you rely on primarily is Lakewood. Pardon me, Your Honor? Lakewood. Lakewood for the issue. This is a good argument, but you also have to base it on the law or what the law is or isn't in the Ninth Circuit. You forcefully argued Lakewood. Is that your main authority to support your arguments? I think Lakewood is the case that does show how we can bring a challenge. Being you didn't apply for a permit, I'm talking about as a facial term. As to the challenge itself, the Minotti case recently, you had a concurring opinion, Your Honor. I wish I would have been in the majority, but I wasn't. Right, I'm just saying. I only concurred in a very tiny little piece of that case. Well, I think what I'm pointing out is. Anything I said in that case doesn't really count for much. I thought you were very well written myself. And my point there, Your Honor, is we talk about Lakewood just for the point that we can bring the challenge without having to apply. That's clear. As to the issue of its unconstitutionality, we look at Thomas v. Chicago Park. We look at the American Jewish Congress v. City of Beverly Hills. These cases show very clearly that this unlimited discretion can't be allowed because it creates within itself such harm to the general public's opportunity to express messages, which may very well be offensive to the general public. But speech is to be robust. Speech is to invite dispute and debate. And therefore, allowing an administrator, without allowing any judicial review of that administrator's decision, to censor speech in a non-public forum, which is arguably the least standard that government needs to meet, how does that filter up into other areas of forum? If it's allowed in a non-public forum, then certainly you're going to say it's going to be allowed in a traditional public forum. Also, regarding the prior restraint matter, there's no dispute that there is a prior restraint. There's no question whatsoever. It's clear that you have to apply before you can ever speak. And here we have additional unlimited discretion because they've created parts of a policy that aren't written in the policy to say before you can come out and hand out a piece of paper, not only must you fill out an application, we're not even going to give you an application until you come here and sit down with us and have a meeting and go through training. That's nowhere within the written policy, but it's something that they've been trained to do, and it's the way they implement the policy. And so we think that additionally, this prior restraint, given if we're looking at Thomas versus Chicago Park, those two standards must still be there under a prior restraint because Freeman versus Maryland was not disturbed on those two elements of no unlimited discretion, and there must be a judicial review. So our point is simply this, Your Honor. The law is very clear. American Jewish Congress versus City of Beverly Hills, you can't have the unlimited discretion. The appellees agree that even in a non-public forum, you cannot have unlimited discretion. What is the policy? The policy is everything that they do, not just the written text of it. That's very clear also in this circuit. And, Your Honor, I'd like to reserve the remaining part of my time. Thank you. Okay. Thank you. Can I please support Karen O'Casey on behalf of the Court of Portland? Where this case really diverges between the two parties is, what is exactly before the Court? And, Your Honor, you brought it right up front. Is it an as-applied challenge based on what might happen or could happen, or is it a facial challenge based on the policy itself? The plaintiffs never applied for a permit. They were never denied a permit. We've never denied a permit in the history of the permitting scheme, and we've never revoked a permit in the history of the permitting scheme. What the trial court correctly did was the trial court looked at the language of the ordinance, which says that this is the process. Once the permit application is filled out, it will issue. There was some dispute below as to whether that meant it shall issue. The trial court held, as he should have, in our view, that you try to construe an ordinance to make it consistent with the Constitution, and he ruled, and that ruling is not challenged, that this permitting scheme, as written, does not allow for discretion because it simply says the permit will issue. It says a limited number of, is that the one? Where does it say it will? I was looking for that. I thought I had found that language before. It's ER 31, and it's under limitations, and then it talks about the policy, and it says that any party, it's subparagraph 1 under C, any party exercising free speech rights must obtain a permit. The permit will specify a reasonable time, place, and manner requirements. A limited number of locations will be assigned. The permit will be valid. And so there was some dispute that that didn't mean shall. The trial court held, essentially, that it does mean it shall issue. There's no language in this ordinance that says the director or the person making the decision can deny the permit based on viewpoint. It simply says they apply, and here's how it's going to be administered. So on a facial challenge, which is what the plaintiffs have, this ordinance is a reasonable time, place, and manner of restriction. What do we do with the district judge noted Sorensen's deposition that when she understood of something offensive, whether she could prohibit that, she said she stated that because the right was being distributed publicly, you wouldn't want something to be objectionable to the public. How do we handle that? I think counsel was arguing that. He was, and that's been sort of one of the flash points in the dispute. You don't do anything with it. If this was an as-implied challenge and the plaintiffs had been denied a permit because Ms. Sorensen said what you have is offensive, then it would be an issue. On a facial challenge, the speculation about what may happen, how the ordinance may be construed or interpreted, is not relevant. And the trial court held that in his decision. And that's consistent with the standing cases, which is what was discussed at the outset under the Tennyson case, for example. It was a First Amendment case, and this Court made clear that when you're dealing with a facial challenge only, you don't go into the underlying application or how it might be interpreted. So that's what you do with it. You don't do anything with it. Well, what about on the facial challenge, the fact that looking at this policy, there's no time limit on when the permit has to be issued. It just says first come, first served. It could be, you know, okay, you'll be first, but you won't get it for a month. What about that discretion that seems to grant the issuer? Well, it doesn't give the director the discretion to decide when. It just says that the permit application gets filled out, and it will be issued if you're the first and you're the second or you're the third. But aside from saying first come, first served, it doesn't control or limit that discretion in any way. It mandates that once the person fills out the permit, it says the permit will issue. But it doesn't say when. No, it does not say when. So it doesn't give discretion to the airport director to decide when to do it? It says, well, I don't like these people. I think I'll hold this up for two weeks. No, it does not. Why not? Because what it says is there is no limitation. In other words, it says once you fill the permit out, then the permit will issue, and that in and of itself takes away the director's discretion to hold back. That question is the type of question that would be more challenging, I think, if it was an as-applied challenge, like the Court said in the Southern Oregon Barter Fair case, that that was a similar type of ordinance. And the argument was that, well, given the language, the administrators could delay it, and that that, therefore, gave them unbridled discretion. And what the Court said in Southern Oregon Barter Fair is, well, that hasn't been the history. There hasn't been any evidence that the administrators have, in fact, used that lack of a time — a specific timeframe in some way to deny somebody access based on viewpoint. And so the Court said that that's a good question, and if it happens in the future, it can be raised for purposes of an as-applied challenge. So it's almost like forcing someone who makes a facial challenge to instead make an as-applied challenge, even though it's not an as-applied challenge, and they're challenging the facial wording of the policy. In the absence of a prior history or practice that that has been a problem, that's correct. Ms. Sorensen testified, actually, in response to that specific question in depositions, Ms. Sorensen testified generally the permits issued the same day they applied for. But that's irrelevant, as you say, because this is a facial challenge. What she said doesn't matter. For instance, she says, well, I wouldn't allow anything offensive. We should ignore that. That's correct. We should ignore all of her depositions, shouldn't we? Well, for purposes of what might happen, yes, yes. Which means, well — She testified about what actually does happen. As to what might happen would be, well, yes, well, you know, I issued the permit within that day. We ignore that because the facial, facially, the policy doesn't require that. That's correct. It doesn't say that, that it has to be issued the same day. What it does say is it is going, it will be issued. The other area that I'd like to address is the futility argument and this unfettered discretion argument in terms of the instance where the baggage claim area was allowed to be used. And that's talked about a lot in both the opening brief and the reply brief as creating some type of unfettered discretion. First of all, the facts on that are that there are designated free speech areas, and that on one occasion, because the designated free speech areas were under construction, they allowed this group to leaflet in the baggage claim area. That, in and of itself, does not somehow create unfettered discretion. We're dealing with a nonpublic forum, and what the nonpublic forum has done is adopt this ordinance, and when one of those areas was not available, it simply moved one group to another place. What the plaintiffs seem to be asking the Court to hold is that if you have a nonpublic forum that allows First Amendment activities, the minute they accommodate a free speech request because of a concrete problem with their designated space areas, that it suddenly becomes unconstitutional. And that doesn't seem to make much sense if what you're trying to do is allow for free speech. There's nothing about that one instance that somehow created unfettered discretion. It wasn't based on viewpoint. It wasn't based on the random decision, well, there's nothing wrong with the designated areas, but we'll let you go to the baggage claim. So there is nothing about that decision that created unfettered discretion in the administrator. With respect to the prior restraint issue, yes, the permitting scheme is a prior restraint. When the Court looks at First Amendment ordinances that have been adopted by nonpublic forums, the only question is, is the limitation reasonable in light of the purpose of the forum? That is the only question. Reasonable means is it arbitrary? Is it capricious? The ordinance itself sets forth why they adopted this ordinance. Traffic issues, congestion issues, construction issues, security issues, there is nothing about the reasons that this ordinance was adopted that are unreasonable, nor do plaintiffs challenge those reasons. Is it viewpoint neutral? That's the second part of the nonpublic forum test. On its face, it is viewpoint neutral. So there is nothing unconstitutional about this ordinance on its face. Unless the Court has further questions, that is all I have. Thank you. Thank you. We have some rebuttal time. Your Honor, I think we need to clarify what means on its face. In other words, what is the policy? It seems to be Appellee's statement that the policy does not include, that is, the policy does not include the objectionable or offensive regulation, the censoring there. They're saying the policy is not what Sorenson says the policy is. It's only what's written in the document. And that's contrary to this Circuit's prior opinions. In Aminato and in the Minotti case, we know very clearly, and citing the Forsyth case, the Supreme Court's case, the policy, when you challenge what you're challenging on its face, is not just those words within the four corners of the text. It says it's applied. No, we're talking about what is the policy. Well, then what is the policy? The policy is what is written, and the policy is also the fact that they can censor and ban objectionable or offensive speech. That is the policy. We're challenging that on its face, not that it has to be applied against us. But I think, and I've been following your argument, you're talking about Sorenson. So you have the written policy, you have Sorenson. How do you get away from being as applied and bring Sorenson in? Is Sorenson the policy? Is she sort of like the paper, holding the paper? If she says something, is she the policy? She is saying what the policy is, you see. She says the policy for them is this. They will ban and censor any objectionable or offensive speech. That is the policy. So this dialogue about the as applied or not applied, it misses the mark because we're saying the policy is that they can ban offensive and objectionable speech, and we have the right to challenge that policy. Let me just ask, so does that also mean that the policy is that they will issue the permit the same day? The policy. It's been the act that was applied for. It would be if that's what they were writing in the policy as well. But there are, as you noted, Your Honor, monotony. No, but I'm just trying to, you said the policy is that they could deny a permit, had unfettered discretion to deny the permit until they didn't like the content of what they did. Correct. That is the policy. Okay. And I'm just asking because that comes from Sorensen's deposition. Correct, Your Honor. And that's what she was trained to do. Okay. And also because of Sorensen's deposition is that they issue the permits on the same day. So is that the policy? So they issue the permits on the same day, but she has unfettered discretion to, what, I guess to deny them also if she wants? No. In fact, I think the factual statement you're referencing, Your Honor, is she didn't say that they would issue them on the same day. That was the interpretation the appellees put forth to you. It's not that she said that. What did she say? She said that she'll typically get them and review them, and she has all this time, as you were pointing out, Your Honor, she has all this time to review it, and then once she gets around to it, she'll typically go ahead and issue them. But that goes away from saying something different, which is I will issue them the same day I get them. In fact, in our case, and we showed in the permits we put in the record, that that is not true. She does not issue them the same day. In other words, I want to really hopefully clarify to this Court, we're talking about we do have a factual challenge to what the policy is, and I think there's some confusion as to what is the policy. The policy is what this person says the policy is as they've been trained to utilize that policy. And that's what the Minotti case held. That's what the Forsyth case held. And as far as any proof that they've denied us or anyone else, that's not even relevant. The Supreme Court specifically said these words in Thornhurst v. Alabama, it is not merely this sporadic abuse of power by the censor that the Constitution means to prevent, but pervasive threat inherent in its very existence that constitutes a danger to freedom of discussion. So it's not whether or not she might apply it against us or someone else. It's her threat that she would. It's the opportunity that she could, Your Honor. And it's not just that she could, Your Honor, but there's no judicial review of that. She can ban them forever. We know that from even if you talk about the words in the policy. She could literally ban my client or anyone else forever from that airport, and no judge could ever even look at that decision. And if you affirm what this magistrate did below, you're saying that this airport could say to someone, you can never come back here. Thomas v. Chicago Park was distinctly different in that regard. In Thomas v. Chicago Park, they could let them not return because they would not have paid what damage they previously caused to that facility. That's totally different from this case. In Grossman, there was no permit requested. You wrote on that opinion, Your Honor, in the Grossman case, the first report. There was no permit applied for there. And I just sum up to say this, Your Honor. The law is very clear. Lakewood, we don't have to apply for a permit. Secondarily, the ACLU case versus Las Vegas, it's very clear that unlimited discretion is not acceptable. This court has held that precedent time and again. We ask you to hold that precedent again in this case. Thank you for your time. Thank you. The matter will be submitted. Thank you very much, ladies and gentlemen. We'll adjourn.
judges: Brunetti, Tashima, Paez